1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   AHEAD, LLC,

11                              Plaintiff,

12                    v.

13   KASC, INC.,

14                              Defendant.

CASE NO. C13- 0187JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS OR IN THE
ALTERNATIVE TRANSFER
VENUE

15                    **I.      INTRODUCTION**

16          Before the court is Defendant KASC, Inc.'s ("KASC") motion to dismiss or in the

17   alternative to transfer venue to the District of Massachusetts.  (Mot. (Dkt. # 20).)  This is

18   a breach of contract case arising out of the sale of a company that manufactures golf

19   apparel.  (2d Am. Compl. (Dkt. # 16) ¶¶ 5, 6.)  The court transfers venue to the District of

20   Massachusetts because, comparing the parties connections to each state, the case bears a

21   stronger connection to Massachusetts than to Washington.

22

ORDER- 1

1       The court has considered the parties' submissions filed in support of and

2 opposition to the motion, and the applicable law.  For the reasons stated below, the court

3 GRANTS in part and DENIES in part the motion.  The court agrees with KASC that

4 venue is improper in the Western District of Washington under 28 U.S.C. § 1391, but

5 declines to dismiss the case.  Instead, the court transfers the case to the District of

6 Massachusetts pursuant to 28 U.S.C. §§ 1406 and 1404.

7 ## II.    BACKGROUND

8       This dispute arises out of the sale of a company and an indemnification agreement

9 accompanying that sale.  In July 2011, Plaintiff Ahead, LLC ("Ahead")[1] purchased

10 substantially all of the assets of Defendant KASC.  (2d Am. Compl. ¶ 6.)  On January 30,

11 2013, Ahead filed a complaint alleging that KASC breached the Asset Purchase

12 Agreement executed between the parties.  (*See* Compl. (Dkt. #1) ¶ 16.)  Ahead later

13 amended its complaint—alleging that KASC also breached the covenant of good faith

14 and fair dealing and seeking declaratory judgment confirming Ahead's right to

15 indemnification.  (*See* 2d Am. Compl.)  In response, KASC filed this motion to dismiss

16 or in the alternative to transfer venue.  (*See* Mot.)

17 **A. The Parties**

18       Ahead is a registered limited liability company in Washington and is wholly

19 owned by Orrefors Kosta Boda, Inc. ("Orrefors"), a Pennsylvania corporation whose

20

21     [1] Prior to the July, 2011, sale, Plaintiff Ahead was named ACE Acquisition, LLC and
Defendant KASC was named Ahead, Inc.  For clarity, Plaintiff buyer will be called "Ahead"
throughout.  Defendant seller will be called "KASC" throughout, even when discussing the years

22 before the sale when Defendant was named Ahead, Inc.

1   principal place of business is Marlton, New Jersey.  (2d Am. Compl. ¶ 1.)  Orrefors is

2   wholly owned by Ahead's Manager, New Wave USA, Inc., which is wholly owned by

3   New Wave Group AB (Resp. (Dkt. # 22) at 2), a company based in Sweden (Shwartz

4   Aff. (Dkt # 21) ¶ 2).

5        KASC is a Massachusetts corporation with its principal place of business in New

6   Bedford, Massachusetts.  (2d Am. Compl. ¶ 2.)  Kenneth Shwartz is President and sole

7   shareholder of KASC and resides in Mattapoisett, Massachusetts.  (Shwartz Aff. ¶ 1.)  In

8   1995, Mr. Shwartz founded KASC's predecessor company, which manufactured and

9   distributed golf-related merchandise such as hats and clothing.  (2d Am. Compl. ¶¶ 5, 3.)

10   The company's principal place of business was New Bedford, Massachusetts, the

11   location of its sole production facility prior to the sale.  (Shwartz Aff. ¶ 5.)  KASC

12   maintains, and Ahead does not dispute, that the New Bedford facility is still the center of

13   Ahead's manufacturing, inventory, and financial operations.  (*Id.*; *see generally* Resp.)

14   As of February 7, 2013, the "Contacting Ahead" page on the company's website stated

15   that Ahead is located in New Bedford, Massachusetts.  (Shwartz Aff. Ex. B.)

16        Although KASC based its operations in Massachusetts, the company conducted

17   business in Washington from at least 2000 to 2011 and maintained a sales representative

18   in Washington from May 2005, onwards.  (Nygaard Decl. (Dkt. # 24) ¶¶ 2, 4.)  KASC

19   maintains that this sales representative was an independent agent, not an employee, who

20   represented other companies in addition to KASC.  (Shwartz Supp. Aff. (Dkt. # 28) ¶ 2.)

21   KASC registered with the Washington Department of Revenue in 2006, has paid taxes in

22   Washington since that time (Nygaard Decl. ¶ 5), and maintains a business license in

1   Washington (Kittle Decl. (Dkt. # 26) Ex. A).  From 2000 to the sale closing in July 2011,

2   KASC's Washington sales totaled about $2,839,932 with an average of approximately

3   $245,244 in annual sales.  (Nygaard Decl. ¶ 4.)  From 2002 through 2010, KASC's

4   overall revenue usually totaled between $30 and $40 million, and Washington sales

5   accounted for less than 1% of KASC's total sales during that time period.  (Reply (Dkt

6   # 27) at 2-3; Shwartz Supp. Aff. ¶ 1.)

7   **B.  The Sale**

8       In October 2010, Ahead and KASC began negotiations to sell substantially all of

9   KASC's assets to Ahead.  (Johnson Decl. (Dkt # 23) ¶ 2.)  According to KASC, the

10  parties negotiated the sale in Massachusetts, and KASC representatives never travelled to

11  Seattle during this period.  (Shwartz Aff. ¶¶ 6-7.)  Ahead maintains that its

12  representatives negotiated the sale almost exclusively from Seattle by phone, mail, and

13  electronic communication.  (Johnson Decl. ¶ 4.)  The parties met only twice prior to the

14  sale, both times at KASC's Massachusetts facility:  in November 2010, and in March

15  2011.  (Shwartz Aff. ¶ 6.)

16      The parties entered into the Asset Purchase Agreement on July 15, 2011, closing

17  the sale of substantially all of KASC's tangible assets on July 29, 2011.  (2d Am. Compl.

18  ¶ 6, 9.)  The agreement contained a clause stating that it shall be governed by

19  Massachusetts law.  (Shwartz Aff. ¶ 8.)  The parties exchanged signatures electronically,

20  with Mr. Shwartz executing his copy for KASC in Massachusetts (*id.*), and Ahead

21  representatives executing the contract in Seattle, Washington (Johnson Decl. ¶ 8.)  On

22  July 29, 2011, the parties also executed an Escrow Agreement with Wells Fargo, creating

an Escrow Account with Wells Fargo's Portland, Oregon branch.  (*Id*. ¶ 10; Shwartz Aff. ¶ 16.)  The Escrow Agreement provides that Ahead's indemnification claims shall be paid out of the Escrow Account, but Wells Fargo shall not pay from the account if Seller provides timely written objection.  (2d Am. Compl. ¶ 10.)

**C. The Alleged Breach**

Ahead alleged in its complaint that KASC breached the Asset Purchase Agreement, entitling Ahead to indemnification from the Escrow Account.  (2d Am. Compl. ¶ 11.)  Many of these alleged breaches relate to the quality of the inventory conveyed by the sale.  (*Id*.)  Ahead says it discovered the breach after its President, Anne Broholm, and consultant Sandy Debolt tested small samples of inventory from the New Bedford facility and compared these samples to KASC's electronic inventory records. (*Id*.)  After discovering the alleged breach, Ahead submitted a claim for indemnification to KASC and Wells Fargo.  (*Id.* ¶ 19.)  KASC disputed Ahead's claim and notified both Ahead's counsel and Wells Fargo.  (Shwartz Aff. Ex. D at 2-5.)  Wells Fargo complied with the terms of the Escrow Agreement and refused to pay Ahead's indemnification claim from the Escrow Account.  (2d Am. Compl. ¶ 20.)  Ahead filed its Complaint on January 30, 2013 (*see* Compl.), and filed its Second Amended Complaint on February 27, 2013 (*see* 2d Am. Compl.).  In response, KASC filed the present motion to dismiss or in the alternative to transfer venue on March 7, 2013.  (*See generally* Mot.)

*//*

# III.    ANALYSIS

## A. KASC's Motion to Dismiss for Lack of Proper Venue

KASC asks this court to dismiss this case for improper venue pursuant to 28 U.S.C. § 1391.  (Mot. at 3.)  However, another statute—28 U.S.C. § 1406—allows a court in a district with improper venue to dismiss the case or transfer it to a different district:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).  Although KASC has not asked this court to transfer this case pursuant to § 1406, district courts in the Ninth Circuit may *sua sponte* transfer venue under 28 U.S.C. § 1404, *see Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986), or under § 1406, *see Engel v. CBS, Inc.*, 886 F. Supp. 728, 730 (D. Cal. 1995) (holding that a district court may *sua sponte* transfer venue under 28 U.S.C. §§ 1404 and 1406 where parties briefed the venue issue but defendants had not filed a motion to transfer venue).  Thus, upon finding venue improper in the Western District of Washington under § 1391, the court may dismiss Ahead's suit pursuant to § 1391 or it may transfer venue under § 1406.  *See id.*

Under the general venue statute, 28 U.S.C. § 1391, a plaintiff may bring a civil action in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  The parties do not dispute that this case may be brought in

Massachusetts pursuant to §§ 1391(b)(1) and (2).  This eliminates § 1391(b)(3) from the

court's consideration.  (*See* Mot. at 6; *see generally* Resp. at 8, 11.)  As discussed below,

the court considers whether venue is proper in the Western District of Washington

because KASC "resides" in this district under § 1391(b)(1) or because a "substantial part

of the events" leading to Ahead's claims occurred in this district under § 1391(b)(2).

### 1.   Venue under § 1391(b)(1):  Residency in the Western District of Washington

Venue under § 1391(b)(1) depends on Defendant KASC's residency as defined in

§ 1391(c)(2).  Subsection (c)(2) defines the residency of non-natural persons in terms of

personal jurisdiction:

(c) Residency.  For all venue purposes—
\*\*\*\*
(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, *in any judicial district in which such defendant is subject to the court's personal jurisdiction* with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business

28 U.S.C. § 1391(c)(2) (emphasis added).  Thus, venue is proper under § 1391(b)(1) only

if this court may exercise personal jurisdiction over KASC.

ORDER- 7

1    For the court to have personal jurisdiction over KASC, Ahead must show by a

2  preponderance of the evidence, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d

3  834, 839 (9th Cir. 1986), that a statute authorizes jurisdiction and that this exercise of

4  jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the

5  U.S. Constitution.  *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  No federal statute

6  authorizes personal jurisdiction in this case, so we look to Washington law, as the law of

7  the state where this court sits.  *See id.*; Fed. R. Civ. P. 4(k)(1)(A).  In Washington, both

8  statutes that authorize general and specific personal jurisdiction are coterminous with due

9  process.[2]  *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 850-51 (9th Cir.

10 1993).

11   In order for a court to exercise personal jurisdiction, due process requires that the

12 non-resident defendant have "minimum contacts" with the forum state such that

13 maintaining the case "does not offend 'traditional notions of fair play and substantial

14 justice.'"  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)

15 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).  A court may subject a

16 _____

17   [2] Under Washington law, the state service of process statute rather than the long arm
18 statute confers general jurisdiction. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169
   (9th Cir. 2006). RCW 4.28.080 (10) grants general jurisdiction over corporations "doing
   business" in the state, a standard equivalent to the due process standard. *Amoco Egypt Oil Co. v.*
19 *Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993) (citing *MBM Fisheries, Inc. v. Bollinger*
   *Mach. Shop & Shipyard, Inc.*, 804 P.2d 627, 630-31 (Wash. App. 1991)); *see also Hartley v. Am.*
20 *Contract Bridge League*, 812 P.2d 109, 112 (Wash. App. 1991) ("In Washington, the "doing
   business" requirement of the statute subsumes the due process requirement."). Whether a
21 defendant is subject to specific personal jurisdiction in Washington depends on Washington's
   long arm statute, RCW 4.28.185. *Freestone Capital Partners, LP v. MKA Real Estate*
22 *Opportunity Fund, LLC*, 230 P.3d 625, 629 (Wash. App. 2010). Washington's long arm statute
   asserts personal jurisdiction to the fullest extent permissible by due process. *Id.*

1  defendant to general jurisdiction when the defendant's contacts are substantial and

2  continuous enough to justify cases unrelated to those contacts, *see Helicopteros*, 466 U.S.

3  at 415 n.9, or to specific jurisdiction when the case arises out of defendant's contacts with

4  the forum state, *see Hanson v. Denckla*, 357 U.S. 235, 251 (1958).  Ahead alleges that

5  KASC is subject to both general (Resp. at 8), and specific jurisdiction in Washington (*id*.

6  at 10).  The court rejects these arguments, holding that KASC is not a Washington

7  "resident" under § 1391(c)(2) and thus venue is improper under § 1391(b)(1).

8            **a.    General Personal Jurisdiction**

9            Under the Due Process Clause, a court may subject a defendant to general personal

10  jurisdiction when "continuous corporate operations within a state [are] thought so

11  substantial . . . as to justify suit against it on causes of action arising from dealings

12  entirely distinct from those activities."  *Int'l Shoe*, 326 U.S. at 318.  The defendant's

13  contacts must "approximate physical presence" in the forum state, which is a high

14  standard.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004)

15  (noting that the minimum contacts test "is an exacting standard, as it should be, because a

16  finding of general jurisdiction permits a defendant to be haled into court in the forum

17  state to answer for any of its activities anywhere in the world").

18            A defendant has sufficient minimum contacts with the forum state when the

19  defendant's contacts are "substantial" or "continuous and systematic."  *Tuazon v. R.J.*

20  *Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (quoting *Helicopteros*, 466

21  U.S. at 415).  Courts do not apply a mechanical test, but instead look to the "economic

22  reality" of the defendant's contacts.  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331

1    (9th Cir. 1984).  This analysis depends on the defendant's presence in the forum.

2    Specifically, a defendant "must not only step through the door, it must also '[sit] down

3    and [make] itself at home.'"  *Tuazon*, 433 F.3d at 1169 (quoting *Glencore Grain*

4    *Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)).

5           Modest sales in a state, and even retaining non-exclusive sales agents in that state,

6    do not meet the high burden for establishing general personal jurisdiction.  *See Bancroft*

7    *& Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (concluding

8    that "engaging in business with residents of the forum state is not in and of itself the kind

9    of activity that approximates physical presence within the state's borders"), *overruled in*

10   *part and on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199

11   (9th Cir. 2006) (en banc).  For example, in *Glencore Grain*, the Ninth Circuit Court of

12   Appeals affirmed the dismissal of a suit against a rice exporter for lack of general

13   jurisdiction.  284 F.3d at 1125.  Although the defendant retained an independently

14   employed sales agent and sold rice in California, the defendant was incorporated in India

15   with its principal place of business in New Delhi.  *Id*. at 1124.  The Court determined that

16   the defendant lacked minimum contacts for general jurisdiction because there was no

17   evidence the defendant owned property, had bank accounts, had employees, solicited

18   business, or designated an agent for service of process in California.  *Id*.

19          Similarly, in *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir.

20   1984), the Ninth Circuit held that marketing efforts and hiring a non-exclusive sales agent

21   in California were insufficient contacts to establish general personal jurisdiction in

22   California.  *Id*. at 1243.  The Court noted that "no court has ever held that the

1  maintenance of even a substantial sales force within the state is a sufficient contact to

2  assert [general] jurisdiction." *Id.* at 1242.  State cases reach the same conclusions.  For

3  example, Washington courts have concluded that RCW 4.28.080(10) does not confer

4  general jurisdiction over defendants whose Washington contacts are "collateral and very

5  minimal," specifically sales totaling less than one percent of a company's regional

6  revenues. *See, e.g.*, *Osborne v. Spokane*, 738 P.2d 1072, 1074 (Wash. App. 1987).

7         In this case, the court finds that KASC's contacts in Washington are too

8  insubstantial to meet the minimum contacts test required by due process and the "doing

9  business" test employed by Washington courts.  While KASC has maintained a

10  continuous presence at least since 2000, its contacts in Washington are too insubstantial

11  to confer general jurisdiction.  KASC has made modest sales in Washington since 2000,

12  has maintained sales representatives in Washington since 2005, and has been licensed to

13  do business in Washington, paying Washington taxes, since 2006.  However, Washington

14  sales accounted for less than one percent of KASC's total revenues. *See Osborne*, 738

15  P.2d at 1074.  The evidence does not indicate that KASC ever owned property in

16  Washington, traveled to Washington for business, designated an agent for service of

17  process, or maintained bank accounts in Washington. *See, e.g.*, *Congoleum*, 729 F.2d at

18  1242.  KASC's contacts in Washington do not "approximate physical presence" in the

19  state in a way that would justify personal jurisdiction in an action unrelated to those

20  contacts. *See Schwarzenegger*, 374 F.3d at 801.

21  *//*

22

### b.   Specific Personal Jurisdiction

The Ninth Circuit applies a three-part test to evaluate whether exercising specific jurisdiction comports with due process:  (1) the defendant must purposely direct action at the forum state, invoking the benefits and protections of its laws, (2) the claim must arise from the defendant's contacts with the forum state, and (3) jurisdiction must be "reasonable," or consistent with "fair play and substantial justice."  *Yahoo!*, 433 F.3d at 1205-06.  Ahead argues that this court has personal jurisdiction over KASC because KASC communicated electronically with Ahead representatives located in Washington and conducted business in Washington from 2000 to the sale in 2011.

The first part of the test, purposeful availment, depends on whether KASC has "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001).  While KASC did negotiate with Ahead representatives located in Washington using electronic communication, the court finds that these actions do not constitute purposeful availment.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991) (concluding that electronic communication directed at the forum state does not ordinarily constitute purposeful availment unless the parties envisioned "continuing and wide-reaching" contacts with the forum state after executing the contract).  In the Ninth Circuit, absent unusual circumstances, "use of the mails, telephone, or other international communication simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state."  *Applied Underwriters, Inc. v. Combined Mgmt.*, 371 Fed. App'x. 834, 835 (9th Cir. 2010) (unpublished).  KASC's communications with

1  Ahead representatives do not meet the first step of the Ninth Circuit's test for specific

2  personal jurisdiction.

3       Ahead also maintains that KASC is subject to specific jurisdiction in Washington

4  because of KASC's sales in the state prior to 2011.  KASC has sold its products in

5  Washington since 2000, has retained sales representatives in the state since 2005, and has

6  held a Washington business license and paid Washington taxes since 2006.  Even

7  assuming these sales constitute sufficient contacts for purposeful availment, meeting the

8  first part of the Ninth Circuit's test, these sales fail the second part.  For the second part

9  of the test, the Ninth Circuit applies a "but for" test to determine if a claim arises from a

10  defendant's actions in a state.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

11  This second requirement is met if Ahead's claims would not have arisen but for KASC's

12  contacts with Washington.  *See Glencore Grain*, 284 F.3d at 1123.  No evidence suggests

13  Ahead's claims would not have arisen "but for" KASC's Washington sales because these

14  sales do not relate to the Asset Purchase Agreement between the parties.  The court

15  therefore finds that none of KASC's contacts with Washington meet the requirements for

16  specific jurisdiction articulated by the Ninth Circuit.

17       The court concludes that venue is improper in the Western District of Washington

18  under 28 U.S.C. § 1391(b)(1) because KASC does not reside in Washington for venue

19  purposes.  Under § 1391(c)(2), a defendant only resides in a state if it is subject to

20  personal jurisdiction in that state.  *See* 28 U.S.C. § 1391(c)(2).  Because Washington may

21  exert neither general nor specific personal jurisdiction over KASC, meaning KASC does

22  not reside in Washington, venue is improper in this district under § 1391(b)(1).

## 2.  Venue Under § 1391(b)(2):  Events Giving Rise to Ahead's Claim

Under § 1391(b)(2), "venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001) (quoting 28 U.S.C. § 1391(b)(2)).  Courts generally interpret this language as permitting venue in a number of possible districts.  *See, e.g.*, *Decker Coal*, 805 F.2d at 842 ("A claim arises in *any* district in which a substantial part of the acts, events, or omissions occurred that gave rise to the claim.") (emphasis added); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (concluding that § 1391(b)(2) requires courts to determine a permissible venue and "does not, as a general matter, require the District Court to determine the best venue").  KASC challenges venue under 28 U.S.C. § 1391(b)(2), arguing that venue is improper because Washington was not the location of a substantial part of the events underlying Ahead's claim.  (Mot. at 4.)  The court agrees.

In a breach of contract case, the claim generally arises for § 1391(b)(2) purposes in the "place of intended performance."  *Decker Coal*, 805 F.2d at 842; *see also Nordquist*, 2006 U.S. Dist. LEXIS 64495, at *6.  For example, in *Decker Coal*, plaintiff mining corporation agreed to supply coal from its Montana mines for use in defendant Edison's Illinois power plants.  805 F.2d at 837.  Decker filed suit in the District of Montana alleging Edison breached the contract, and Edison moved to dismiss or transfer venue to the Northern District of Illinois.  *Id.* at 837-38.  The Ninth Circuit determined that under a prior version of § 1391(b)(2), venue was proper in Montana.  *Id.* at 842.  Decker's claim "arose in Montana" for venue purposes because Montana was the "place

1   of intended performance" for the contract:  the location of the mine underlying the whole

2   agreement.  *Id.*  Similarly, the court in *Nordquist v. Blackham*, No. C06-5433 FDB, 2006

3   U.S. Dist. LEXIS 64495 (W.D. Wash. Sept. 11, 2006), held that, in a claim arising out of

4   the sale of a chiropractic business, venue was proper in the location of the subject of the

5   sale (the business) because this was the "place of intended performance."  *Id.* at *6.

6         In this case, the parties negotiated, signed the Asset Purchase Agreement, and

7   conducted business in both Washington and Massachusetts.  *See id.* at *6.  However, the

8   in-person meetings between the parties all took place in Massachusetts.  *See id*. at *7.

9   Additionally, the "place of intended performance" for this contract was Massachusetts

10   rather than Washington because Massachusetts was the location of the business, facility,

11   and inventory underlying the Asset Purchase Agreement.  *See id*. at *6; *Decker Coal* at

12   842.  Like in *Nordquist*, "the contract was negotiated and performed primarily in

13   [Massachusetts], not Washington" and "any alleged breach occurred in [Massachusetts],

14   even if the aftermath was felt by Plaintiff in Washington."  2006 U.S. Dis. LEXIS 64495,

15   *7.

16         Ahead points out several district court cases from other circuits holding venue

17   proper in districts where plaintiffs based their operations, or where defendants sent

18   communications.  (Resp. at 12.)   For example, in *Hardee's Food Sys., Inc. v. Beardmore*,

19   169 F.R.D. 311 (E.D. N.C. 1996), the non-resident defendants were franchisees of

20   plaintiff Hardee's, a North Carolina-based company.  *Id.* at 313.  The court determined

21   that a substantial part of the events leading to the plaintiffs' claim for breach of contract

22   occurred in North Carolina because Hardee's negotiated the franchise agreements in

1  North Carolina and its claims arose from defendants' failure to send payment to North

2  Carolina.  *Id.* at 317.

3      The court is not persuaded by Ahead's argument.  *Hardee's* is distinguishable

4  from the case at hand because in *Hardee's* the defendants established an ongoing

5  relationship with North Carolina by agreeing to send a royalty fee to Hardee's every

6  month.  *See id.*  By contrast, KASC exchanged documents with Ahead in Washington

7  only to negotiate the sale and never entered into or breached an agreement premised on a

8  continuing relationship with a Washington-based entity.  In an isolated sale like this, "the

9  fact that payments were sent to Plaintiff in Washington and the contract was executed by

10  Plaintiff in Washington does not weigh heavily" for determining whether venue in

11  Washington is proper.  *Nordquist*, 2006 U.S. Dist. LEXIS 64495, at *7.

12      Ahead's reliance on *Figgie Int'l, Inc. v. Detileria Serralees, Inc.*, 925 F. Supp. 411

13  (D.S.C. 1996), is similarly misplaced.  In *Figgie*, the parties entered into a contract where

14  plaintiff manufacturer, based in South Carolina, agreed to supply bottle-labeling

15  equipment to defendant bottling company, based in Puerto Rico.  *Id.* at 412.  Plaintiff's

16  equipment did not perform as anticipated, and plaintiff brought suit in South Carolina to

17  resolve the dispute over defendant's available remedies.  *Id.*  Defendant moved to

18  dismiss, arguing that South Carolina was an improper venue.  *Id.*  The court held that

19  South Carolina was a proper venue because a substantial part of the events leading to the

20  breach occurred in South Carolina.  *Id.* at 413.

21      *Figgie* is inapplicable to the present case because in *Figgie* the objects underlying

22  the sale, the defective bottle labeling equipment, were manufactured in South Carolina.

1   *Id.* South Carolina was the location of both the intended performance and the alleged

2   breach of contract. *Id.* Here, Massachusetts rather than Washington was the location of

3   intended performance of the Asset Purchase Agreement, and if KASC breached this

4   contract it did so in Massachusetts, not Washington.  For these reasons, the court

5   concludes that Washington was not the location of a substantial part of the events leading

6   to Ahead's claim, and venue is thus improper in this district under 28 U.S.C. §

7   1391(b)(2).

8          The court holds that venue is improper in the Western District of Washington

9   under both §§ 1391(b)(1) and 1391(b)(2).  Section 1391(b)(1) does not grant venue

10  because KASC does not reside in this district.  Washington may not exert either general

11  or specific personal jurisdiction in this case, because KASC does not meet the residency

12  requirements articulated in § 1391(c)(2).  Additionally, § 1391(b)(2) does not grant venue

13  because Washington was not the location of a substantial part of the events leading to

14  Ahead's claim.  Because venue is improper in this district, the court may dismiss this

15  case under § 1391 as requested by KASC or *sua sponte* transfer venue to the District of

16  Massachusetts under 28 U.S.C. § 1406.  *See Engel*, 886 F. Supp. at 730.  The court

17  chooses to transfer venue to the District of Massachusetts because this case has

18  significant connections to that state, discussed in detail below.

19  **B.  KASC's Motion to Transfer Venue Under § 1404(a)**

20         Even if venue is proper in the Western District of Washington, the court has

21  discretion under 28 U.S.C. § 1404 to transfer this case to another district where venue is

22

ORDER- 17

proper.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section

1404(a) permits transfer to a state with proper venue based on convenience and justice:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  The purpose of this statute is to "prevent the waste of time, energy,

and money and to protect litigants, witnesses and the public against unnecessary

inconvenience and expense."  *Pedigo Prod., Inc. v. Kimberly-Clark Worldwide, Inc.*, No.

3:12-CV-05502-BHS, 2013 U.S. Dist. LEXIS 12690, at *5 (W.D. Wash. Jan. 30, 2013)

(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  The parties do not dispute

that this case could have been brought in Massachusetts, so disposition of this motion

depends on whether transfer to Massachusetts is most convenient and just.  KASC bears

the burden of showing transfer is appropriate.  *Silver Valley Partners, LLC v. De Motte*,

No. C05-5590 RBL, 2006 U.S. Dist. LEXIS 67745, *6 (W.D. Wash., June 22, 2006);

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Decker Coal*, 805 F.2d at 843.

The Ninth Circuit applies a balancing test to determine whether to transfer a case

under § 1404(a).  *Jones*, 211 F.3d at 498.  The court considers the following factors:  "(1)

the location where the relevant agreements were negotiated and executed, (2) the state

that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's

cause of action in the chosen forum, (6) the differences in the costs of litigation in the two

forums, (7) the availability of compulsory process to compel attendance of unwilling

1   non-party witnesses, [] (8) the ease of access to sources of proof," and (9) the public

2   policy considerations of the forum state.  *Id*. at 498-99.  The court considers each of these

3   factors in turn, and ultimately transfers this case to the District of Massachusetts pursuant

4   to 28 U.S.C. § 1404(a).

5         **1.  Location Where Agreement was Negotiated and Executed**

6         The first *Jones* factor favors venue in the location where the agreement was

7   negotiated and executed.  This is a neutral factor when parties negotiate and execute a

8   contract in multiple locations.  *See Silver Valley Partners*, 2006 U.S. Dist. LEXIS 67745

9   at *6.  For example, in *Silver Valley Partners*, an Idaho-based defendant negotiated an

10  agreement with plaintiffs located in Washington.  *Id*. at *3.  All in-person negotiations

11  occurred in Idaho, but the parties exchanged electronic communications between Idaho

12  and Washington.  *Id*. at *7.  The parties executed the agreement in Idaho, but plaintiffs

13  contended that their injuries occurred in Washington.  *Id*.  The court in *Silver Valley*

14  determined that the first *Jones* factor was neutral on venue because "the activities which

15  led to the execution of the relevant agreements occurred in both Idaho and in

16  Washington."  *Id*.

17        The present case resembles *Silver Valley* because the parties negotiated in both

18  Massachusetts and Washington and executed the agreement in their respective states.

19  KASC negotiated from Massachusetts, never sent representatives to Seattle, and executed

20  the Asset Purchase Agreement in Massachusetts. (Shwartz Aff. ¶¶ 6-7.)  Ahead

21  negotiated and executed the agreement in Washington, and the parties exchanged

22

1  electronic communications to and from Washington.  (Johnson Decl. ¶¶ 4, 8.)  The court

2  finds that this factor weighs in favor of neither location.

3         **2.  State Most Familiar with the Governing Law**

4         In the Asset Purchase Agreement, the parties agreed that Massachusetts law

5  governs the contract.  Generally, federal courts are equally equipped to apply state law

6  when the applicable law is not complex.  *See, e.g., Burns v. Gerber Prods. Co.*, No. CV-

7  12-5027-EFS, 2013 U.S. Dist. LEXIS 18981, *8-9 (E.D. Wash. Feb. 12, 2013) (finding

8  courts in the Eastern District of Washington and the District of New Jersey equally

9  competent at applying state law when the state law was not complex or specialized).

10  However, when parties specifically agree on contractual choice of law provisions, courts

11  have concluded that these provisions favor transfer.  *See, e.g., Nordquist*, 2006 U.S. Dist.

12  LEXIS 64495 at *10; *Silver Valley Partners*, 2006 U.S. Dist. LEXIS 67745 at *15 ("The

13  fact that the parties specifically selected Idaho law . . . favors transfer to Idaho").  The

14  court concludes that the choice of Massachusetts law in the Asset Purchase Agreement

15  favors transfer of venue to Massachusetts.

16         **3.  Plaintiff's Choice of Forum**

17         As the plaintiff in this action, Ahead's choice of forum receives deference under

18  § 1404(a), and KASC must "make a strong showing of inconvenience" to upset that

19  choice.  *Decker Coal*, 805 F.2d at 843.  However, despite a plaintiff's choice of forum,

20  courts have discretion to transfer venue under § 1404(a).  *See Norwood v. Kirkpatrick*,

21  349 U.S. 29, 32 (1955) (holding "the discretion to be exercised is broader" under §

22  1404(a) than under the doctrine of *forum non conveniens*).  For example, courts consider

the public policy implications of a plaintiff's choice of forum.  *See, e.g.*, *Jones*, 211 F.3d at 499 (finding that the plaintiff's choice of forum was "supported" by the forum state's public policy interest in providing a local forum for local franchisees).  Many courts are also hesitant to defer to a plaintiff's choice of forum when the case lacks strong ties to that district.  *See Nordquist*, 2006 U.S. Dist. LEXIS 64495 at *10 ("the degree to which courts defer to plaintiff's chosen venue is substantially reduced where the plaintiff's venue choice lacks a significant connection to the activities alleged in the complaint"); *Pedigo Prod., Inc.*, 2013 U.S. Dist. LEXIS 12690 at *7 ("Where the action has little connection with the chosen forum, less deference is accorded plaintiff's choice, even if plaintiff is a resident of the forum state.").

The parties do not allege any special public policy considerations supporting a plaintiff's choice of forum in contract dispute cases, and the case bears at best weak connections to Washington, as described previously.  Almost all relevant events occurred in Massachusetts, and the business underlying the sale is located in Massachusetts.  Although not enough to completely overcome the presumption in favor of Ahead's forum choice, the court finds that the lack of strong connections to Washington makes this factor neutral.

### 4. Parties' Contacts with the Forum

The fourth factor focuses on the parties' contacts with either forum.  In this case, Ahead has strong contacts with Washington.  Ahead is a registered limited liability company in the state (2d Am. Compl. ¶ 1) and Mr. Johnson, Ahead's Chairman and the President and CEO of Ahead's Manager, New Wave USA, Inc., works and resides in

1   Seattle.  (Johnson Decl. ¶ 1.)  Ahead primarily negotiated the Asset Purchase Agreement

2   with KASC from Washington.  (*Id*. at ¶ 5.)  KASC, on the other hand, has only moderate

3   contacts with Washington, and few of those contacts actually relate to this case.  *See*

4   *Silver Valley Partners*, 2006 U.S. Dist. LEXIS 67745 at *10 (transferring venue because

5   "both parties have case-related contacts with the District of Idaho, and only plaintiffs

6   have case-related contacts with the Western District of Washington").  KASC's

7   Washington sales date back to 2000, it has had sales representatives in Washington since

8   2005, and it has held a business license since 2006.  (Nygaard Decl. ¶¶ 2, 4-5.)  However,

9   KASC's only contacts with Washington related to this case are its electronic

10  communications with Ahead during contract negotiations.

11          By contrast, both parties have strong contacts in Massachusetts, and those contacts

12  directly relate to this case.  KASC's principal place of business is in Massachusetts,

13  KASC negotiated and executed the sale in Massachusetts, and the parties' only in-person

14  meetings prior to the sale occurred in Massachusetts.  (Shwartz Aff. ¶¶ 5-7.)  The facility

15  and inventory underlying both the sale and many of Ahead's breach of contract claims

16  are physically located in Massachusetts.  (*Id*. at ¶ 5.)  KASC maintains, and Ahead does

17  not dispute, that the New Bedford, Massachusetts facility was the center of KASC's

18  operations from 1995 until the sale, and remains the center of Ahead's manufacturing,

19  inventory, and financial operations.  (*Id*.)  The Asset Purchase Agreement contains a

20  choice of law provision stating that Massachusetts law governs the contract.  (*Id*. at ¶ 8.)

21  The court finds that this factor favors transfer because KASC has few contacts in

22

1  Washington, but both parties have strong contacts related to this case in Massachusetts.

2  *See Jones*, 211 F.3d at 499.

3  ### 5.   Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

4  The fifth factor of the *Jones* test focuses on the contacts between Ahead's breach

5  of contract claims and Ahead's chosen forum (Washington).  In claims for breach of

6  contract, this analysis centers on the location of the subject of the contract.  *See id.*;

7  *Nordquist*, 2006 U.S. Dist. LEXIS 64495 at *10-11.  For example, in *Jones*, GNC entered

8  into a franchising agreement with the plaintiffs.  211 F.3d at 496.  The Ninth Circuit

9  refused to transfer venue from California to Pennsylvania, noting that "Jones' claims

10  arose out of the construction and initial operation of the store located in LaVerne,

11  California."  *Id.* at 499.  Similarly, in *Nordquist*, the plaintiff alleged that the defendant

12  breached a contract for the sale of a chiropractic business.  2006 U.S. Dist. LEXIS 64495

13  at *3.  The business was physically located in Texas, the purchaser resided in Texas, the

14  defendant resided in Texas when operating the business, and the negotiations naturally

15  centered on the location of the business.  *Id.* at *11.   Based on these facts, the court said

16  this factor "weigh[ed] heavily in favor of transfer."  *Id.*   The court finds that this factor

17  also weighs in favor of transfer in the present case because the facility and the inventory

18  conveyed during the sale—the subject of both the Asset Purchase Agreement and the

19  alleged breach of that agreement—are located in Massachusetts, not Washington.

20  ### 6.  Differences in the Costs of Litigation in the Two Forums

21  When considering the difference in cost between two forums, courts disfavor

22  transferring venue when litigation costs are not significantly reduced.  Specifically, "the

1    transfer must be 'to a more convenient forum, not to a forum likely to prove equally

2    convenient or inconvenient.'"  *Wang v. Lb Int'l*, No. C04-2475JLR, 2005 U.S. Dist.

3    LEXIS 36555, *3 (W.D. Wash. Aug. 29, 2005) (quoting *Van Dusen*, 376 U.S at 645-46).

4    Courts refuse to transfer venue when "transfer would merely shift rather than eliminate"

5    costs and inconvenience.  *Decker Coal*, 805 F.2d at 843.

6          The relative cost analysis focuses primarily on the venue's proximity to witnesses.

7    *See Nordquist*, 2006 U.S. Dist. LEXIS 64495 at *11 ("litigation costs are reduced when

8    venue is located near most of the witnesses expected to testify or be deposed"); *Silver

9    Valley Partners*, 2006 U.S. Dist. LEXIS 67745 at *11.  In this case, the parties each

10   identified witnesses located all over the country.  KASC identified seven current or

11   former Ahead employees located in Massachusetts or nearby Rhode Island, as well as

12   potential witnesses in North Carolina and Georgia.  (Shwartz Aff. ¶ 12.)  Ahead does not

13   dispute the importance of these witnesses, but identifies several witnesses from outside

14   Massachusetts.  Specifically, Ahead identifies three employees of Ahead's Manager

15   located in Washington, an accountant from Arizona, an executive of Ahead's Manager

16   located in Sweden, and attorneys for Ahead located in Washington.  (Johnson Decl. ¶ 9.)

17   KASC questions the relevance of some of these witnesses.  (Shwartz Supp. Aff. ¶ 3.)

18         The witnesses located far from Washington and Massachusetts do not affect the

19   relative costs of litigation in this case because they would need to travel regardless.

20   Removing them from consideration, the court concludes that this factor weighs against

21   transfer because the parties have witnesses located in or near Washington and

22   Massachusetts.  *See Decker Coal*, 805 F.2d at 843.  As in *Decker Coal*, changing venue

ORDER- 24

1    would merely require a different set of witnesses to travel, shifting rather than eliminating

2    costs.  *Id.*

3        **7.   Availability of Compulsory Process to Compel Attendance of Unwilling
             Non-Party Witnesses**

4        The availability of compulsory process only favors transfer if Massachusetts has

5    the ability to subpoena more non-party witnesses than Washington.  *See Silver Valley*

6    *Partners*, 2006 U.S. Dist. LEXIS 67745 at *12 (comparing Washington and Idaho-based

7    non-party witnesses to evaluate the availability of compulsory process in each venue).

8    Additionally, a court's subpoena power only matters if non-party witnesses within the

9    state will likely refuse to testify.  *See id.* (concluding the fact that "[n]one of these

10   witnesses will likely be unwilling to testify" eliminates this factor's importance).  For

11   example, the court in *Silver Valley Partners* determined that the availability of subpoena

12   power in Washington to compel non-party witnesses did not weigh on the transfer

13   question because the plaintiff's Washington witnesses were "experts, presumably paid for

14   their testimony" and thus would almost certainly be willing to testify.  *Id.*  The parties

15   had not retained the Idaho-based non-party witnesses, and thus the District of Idaho's

16   power to compel attendance weighed in favor of transferring venue to Idaho.  *Id.*

17       In this case, KASC and Ahead each point out non-party witnesses located in

18   Massachusetts and Washington.  (Shwartz Aff. ¶ 12; Johnson Decl. ¶ 9.)  However, both

19   sides point to either employees or witnesses hired by the parties.  (*Id.*)  Because it is

20   unlikely any of these witnesses will refuse to testify, the court finds that this factor does

21

22

1  not weigh for or against transferring venue.  *See Silver Valley Partners*, 2006 U.S. Dist.

2  LEXIS 67745 at *12.

3      **8.  Ease of Access to Sources of Proof**

4      The eighth *Jones* factor focuses on access to sources of proof—more specifically

5  the location of "the relevant witnesses and other sources of proof."  *Jones*, 211 F.3d 495,

6  499.  Besides witnesses, this analysis focuses on the location of the assets of the sale and

7  documentary evidence.  *See Nordquist*, 2006 U.S. Dist. LEXIS 64495 at *12 (finding that

8  the location of the assets of the sale in Texas supported transferring venue to Texas);

9  *Silver Valley Partners*, 2006 U.S. Dist. LEXIS 67745 at *13 (finding that the location of

10  the documentary evidence in Idaho supported transferring venue to Idaho).

11      As previously explained, the parties identified witnesses located all over the

12  country, including in Washington and Idaho.  (Shwartz Aff. ¶ 12; Johnson Decl. ¶ 9.)

13  The location of witnesses thus favors neither venue.  However, all of the assets of this

14  sale are located in Massachusetts, including the New Bedford facility and the inventory

15  underlying many of Ahead's claims.  (Shwartz Aff. ¶ 5.)  All of KASC's documentary

16  evidence and all records related to the New Bedford facility are also located in

17  Massachusetts.  (*Id.*)

18      Ahead argues that "[i]nspection of any physical inventory is largely irrelevant to []

19  Ahead's claims in this lawsuit, as [] Ahead's claims relate solely to [KASC's]

20  accounting, which consists of electronic records."  (Resp. at 19.)  However, Ahead states

21  that it discovered that KASC breached the sale agreement when Ahead's President, Ms.

22  Broholm, and consultant Ms. Debolt tested a small sample of the inventory located at the

New Bedford facility.  (Johnson Decl. ¶ 11.)  Ahead states without support that conducting further inventory inspections would be unnecessary for proceeding with this case.  (Resp. at 19.)  The court rejects this argument because both parties acknowledge the importance of the assets conveyed by this sale.  By basing its claim on a physical inspection of the inventory located in Massachusetts, and on accounting materials resulting from that physical inspection, Ahead connects this case to the assets and documentary evidence located in Massachusetts.  The court concludes that this factor favors transfer to the District of Massachusetts.

### 9.  Public Policy of the Forum State

Public policy factors include the "local interest in having localized controversies decided at home" and deciding cases "where the claim arose." *Decker Coal*, 805 F.2d 834 at 843.  Additionally, states have an interest in providing a forum for their injured residents. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (noting that "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured" in a case determining personal jurisdiction).

In this case, Ahead's claim arose in Massachusetts because this was the place of intended performance of this agreement, as explained above. *See Decker Coal*, 805 F.2d at 842.  Ahead felt the effects of KASC's alleged breach in Washington, and thus Washington retains some interest in providing Ahead a forum for redress.  However, Massachusetts has a stronger interest in having this "localized" controversy decided within that state.  KASC operated its business in Massachusetts for fifteen years before beginning negotiations with Ahead; the sale conveyed property located in Massachusetts;

1  Ahead still bases its manufacturing, inventory, and financial operations in Massachusetts;

2  and this entire controversy arose from the sale of a Massachusetts business.  As the

3  location of virtually all pertinent events and assets, Massachusetts has a strong interest in

4  having this case decided "at home."  For these reasons, the court finds that this factor

5  favors transferring venue to Massachusetts.

6          Balancing the above factors, the court holds that transfer to the District of

7  Massachusetts is warranted pursuant to 28 U.S.C. § 1404.  It is true that the cost of

8  litigating this case in Washington as opposed to Massachusetts weighs against transfer.

9  However, the remaining *Jones* factors are either neutral or favor transfer.  The parties

10 negotiated and executed the Asset Purchase Agreement in both states, and neither party

11 has alerted the court to non-party witnesses who may be unwilling to testify, making

12 those factors neutral.  Plaintiff Ahead's choice of venue would normally weigh in favor

13 of keeping the case in Washington, but here this factor favors neither venue because the

14 action bears only minimal connections to Washington.  All other factors favor

15 transferring venue:  the parties specifically chose to be governed by Massachusetts law,

16 KASC has only minimal connections with Washington but both parties have strong

17 connections with Massachusetts, virtually all important contacts are in Massachusetts,

18 and Ahead's suit arises from those Massachusetts contacts.  Finally, this is a case about

19 the sale of a Massachusetts business and the assets underlying the sale remain in that

20 state.  Massachusetts is thus the location with easiest access to sources of proof, and the

21 state with a localized interest in litigating this matter.  On sum, these factors favor

22 transfer to the District of Massachusetts.

ORDER- 28

## IV.   CONCLUSION

For all of the reasons stated above, the court GRANTS in part and DENIES in part Defendant KASC's motion to dismiss or in the alternative to transfer venue.  The court concludes that venue is improper in the Western District of Washington under 28 U.S.C. § 1391, but rather than dismissing the case the court transfers venue to the District of Massachusetts pursuant to 28 U.S.C. § 1406.  Alternatively, even if venue is proper in this district, the court transfers the case pursuant to 28 U.S.C. § 1404.

Dated this 23rd day of April, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 29